## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**Case No.:** _____

JOSH GATOFF, ALLEN GAVARTIN,
SCOTT LIEBERMAN, ANDREW MAY,
SCOTT SILVERMAN, DV GROUP, LLC,
and LORBER ALPHA II, LP,

                Plaintiffs,

v.

PATRICK HORSMAN,

                Defendant.

## COMPLAINT

Plaintiffs Josh Gatoff, Allen Gavartin, Scott Lieberman, Andrew May, Scott Silverman, DV Group, LLC, and Lorber Alpha II, LP bring this Complaint against Defendant on the following grounds:

## INTRODUCTION

1.    Defendant Horsman, individually and through an intricate web of interrelated companies, perpetrated a scheme to defraud Plaintiffs by inducing them to invest in "Integrated CBD," a purported startup venture in the CBD/hemp industry.

*Gatoff, et al. v. Horsman*

2.      Horsman, a self-proclaimed "serial entrepreneur," made material misrepresentations and omissions in order to solicit Plaintiffs' investments in his company.  Horsman proceeded to engage in a course of gross misconduct designed to funnel Plaintiffs' invested funds (as well as proceeds from a Paycheck Protection Program loan) into his own pockets and into the coffers of entities Horsman owned and/or controlled.

3.      At the center of this web of companies were Integrated CBD, LLC, the main operating entity and primary investor-facing entity, and Integrated CBD Holdings, LLC, Integrated CBD's holding company and the entity in which several Plaintiffs invested.

4.      Unfortunately for Plaintiffs, Horsman ran Integrated CBD into the ground, misrepresented the risks of the investments, and took capital for personal gain, causing Plaintiffs to lose the entirety of their investments.

## JURISDICTION AND VENUE

5.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, Plaintiffs are citizens of New York, Arizona, Michigan, Illinois, and Florida, while Defendant is a citizen of Puerto Rico.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Miami-

Dade County, Florida.  Specifically, Defendant Horsman resided in Miami-Dade County during the time period of the events detailed herein and used Miami-Dade County as his base of operations to run Integrated CBD and commit the misconduct detailed herein.  Often, Horsman used an email signature block that displayed the Integrated CBD logo and a Miami Beach address.

## THE PARTIES

7.     Plaintiff Josh Gatoff is an individual who resides in Roslyn Heights, New York.  On the basis of Horsman's misrepresentations and omissions set forth herein, Gatoff invested $50,000 in Integrated CBD.

8.     Plaintiff Allen Gavartin is an individual who resides in Phoenix, Arizona.  In or around March 2019, on the basis of Horsman's misrepresentations and omissions set forth herein, Gavartin invested $25,000 in Integrated CBD.

9.     Plaintiff Scott Lieberman is an individual who resides in Ann Arbor, Michigan.   In or around September 2019, on the basis of Horsman's misrepresentations and omissions set forth herein, Lieberman invested $200,000 in Integrated CBD.

10.     Plaintiff Andrew May is an individual who resides in Old Westbury, New York.   In or around September 2019, on the basis of Horsman's misrepresentations and omissions set forth herein, May invested $100,000 in Integrated CBD.

11.     Plaintiff Scott Silverman is an individual who resides in Old Westbury, New York.   In or around September 2019, on the basis of Horsman's misrepresentations and omissions set forth herein, Silverman invested $200,000 in Integrated CBD.

12.     Plaintiff DV Group, LLC is a Delaware limited liability company with its principal place of business located at 216 W. Jackson Blvd, 3rd Floor, Chicago, Illinois 60606.  In or around July 2019, on the basis of Horsman's misrepresentations and omissions set forth herein, DV Group, LLC invested $500,000 in Integrated CBD.

13.     Plaintiff Lorber Alpha II, LP's general partner, Lorber Alpha II, LLC is a Delaware limited liability corporation with its principal place of business located in Miami Beach, Florida.  Plaintiff Lorber Alpha II, LP's limited partners reside in New York and Florida, respectively.  On the basis of Horsman's misrepresentations and omissions set forth herein, Lorber Alpha II, LP invested $250,000 and $58,000 in Integrated CBD in September and November 2019, respectively.

14.     Defendant Patrick Horsman is an individual who resides in San Juan, Puerto Rico.

## RELEVANT NON-PARTIES

15.     In order to perpetrate and facilitate the misconduct detailed herein, and in order to insulate himself from personal liability for the misconduct detailed herein, Horsman created a complex web of companies, each of which played a role in his scheme to defraud Plaintiffs of their invested funds.  At all relevant times, Horsman controlled—either as a named principal or by purporting to be a principal—each of these companies.  These companies included, but are not limited to:

   a.  Integrated CBD, LLC a Delaware limited liability company for which Horsman was President, CEO, and Chairman of the Board;

   b.  Integrated CBD Holdings, LLC, a Delaware limited liability company for which Horsman acted and/or purported to act as manager and/or principal member;

   c.  Integrated AG Holdings LLC, an Arizona limited liability company for which Horsman was a member and manager;

   d.  Integrated AG Equipment LLC, an Arizona limited liability company for which Horsman was a manager;

   e.  Integrated AG Operations LLC, a Delaware limited liability company for which Horsman acted and/or purported to act as its manager and principal member;

   f.  IAG Equipment LLC, an Arizona limited liability company for which Horsman was manager;

   g.  AZ Farm Management LLC, a Delaware limited liability company for which Horsman was principal member;

   h.  Integrated AG LP, a Delaware limited partnership for which Horsman was managing partner, co-founder, and co-owner;

    i.  Verified Organic LP, a Delaware limited partnership for which Horsman was co-founder and co-owner;

    j.  Verified Organic LLC, a Delaware limited liability company for which Horsman was co-founder and co-owner;

    k.  Integrated AG Management LLC, a Delaware limited liability company for which Horsman acted and/or purported to act as manager and/or principal member;

    l.  Integrated AG Holdings AZ LLC, an Arizona limited liability company for which Horsman was a member and manager;

    m.  Integrated AG XI LLC, an Arizona limited liability company whose sole member was Integrated AG Management LLC, for which Horsman acted and/or purported to act as manager and/or principal member;

    n.  Integrated AG XII LLC, an Arizona limited liability company whose sole manager was Integrated AG Holdings LLC, which was managed by Horsman; and

    o.  Hyder Ranch LLC, an Arizona limited liability company managed in part by Integrated AG XII LLC, whose sole manager was Integrated AG Holdings LLC, which was managed by Horsman.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

### I.    Horsman's solicitation of Plaintiffs' investments

16.    In or around March 2019, to solicit investments in Integrated CBD, LLC ("Integrated CBD") and/or Integrated CBD Holdings, LLC ("Integrated CBD Holdings"), Horsman created or caused to be created and disseminated or caused to be disseminated an investment presentation (the "March 2019 Presentation").

17.     The March 2019 Presentation is replete with lofty projections, goals, and capabilities for Integrated CBD, all designed to convince Plaintiffs that Integrated CBD was poised to carve out a substantial market share in the rapidly-growing CBD industry and generate exponential returns for Plaintiffs.

18.     In the March 2019 Presentation, Horsman made or caused to be made material misrepresentations and omissions with respect to Integrated CBD, including:

    a.  Integrated CBD had "[a]ccess to over 10,000 acres of certified organic/conventional farmland in Arizona";

    b.  Integrated CBD was poised to "[p]lant 10,000 AZ acres" in early 2020; and

    c.  Integrated CBD had developed strategic partnerships with Verified Organic and Integrated Ag.

19.     These representations, among others, formed the basis for Horsman's projection that Integrated CBD was poised to become "a multi-billion-dollar company capable of public market exit."  Horsman shared this presentation with investors and vouched for the accuracy of its contents.  These factual assertions and projections were materially false because Integrated CBD did not have the resources, relationships, or financial means to engage in this business or a realistic basis to claim the company was on the verge of being a multi-billion-dollar business.

20.    In or around August 2019, to solicit investments in Integrated CBD and/or Integrated CBD Holdings, Horsman created or caused to be created and disseminated or caused to be disseminated another "Investor Presentation," dated August 2019 (the "August 2019 Presentation").

21.    The August 2019 Presentation is again replete with lofty projections, goals, and capabilities for Integrated CBD, all designed to convince Plaintiffs that Integrated CBD was poised to carve out a substantial market share in the rapidly-growing CBD industry and generate exponential returns for Plaintiffs.

22.    In the August 2019 Presentation, Horsman made or caused to be made material misrepresentations and omissions with respect to Integrated CBD, including:

   a.  Integrated CBD was poised to "[p]lant 10,000 AZ acres" in 2020;

   b.  Integrated CBD had "access to **one of the largest certified organic farms in the United States: 10,000 acres**" (emphasis in original); and

   c.  Integrated CBD had developed strategic partnerships with Verified Organic and Integrated Ag.

23.    These representations, among others, formed the basis for Horsman's repeated projection that Integrated CBD was poised to become "a multi-billion-dollar company capable of public market exit."  These factual assertions and projections were materially false because Integrated CBD did not have the resources,

relationships, or financial means to engage in this business or a realistic basis to claim the company was on the verge of being a multi-billion-dollar business.

24.    In or around November 2019, to solicit investments in Integrated CBD and/or Integrated CBD Holdings, Horsman created or caused to be created and disseminated or caused to be disseminated yet another investor presentation, this time titled "Confidential Information Presentation," dated November 2019 (the "November 2019 Presentation").

25.    The November 2019 Presentation is again replete with lofty projections, goals, and capabilities for Integrated CBD, all designed to convince Plaintiffs that Integrated CBD was poised to carve out a substantial market share in the rapidly-growing CBD industry and generate exponential returns for Plaintiffs.

26.    In the November 2019 Presentation, Horsman made or caused to be made material misrepresentations and omissions with respect to Integrated CBD, including:

      a.  Integrated CBD was poised to "[p]lant up to 10,000 AZ acres" in 2020;

      b.  Integrated CBD had "access to 10,000 acres of certified organic farmland" which it stated was "immediately available"; and

      c.  Integrated CBD's farmland was "[s]uperior, isolated and contiguous".

27.    These representations, among others, formed the basis for Horsman's stated projection that Integrated CBD would enjoy revenue of *over $1 billion* in

2021.  Horsman knew or should have known that Integrated CBD had no realistic chance of generating over $ 1 billion in revenue.  These factual assertions and projections were materially false because Integrated CBD did not have the resources, relationships, or financial means to engage in this business or a realistic basis to claim the company was on the verge of being a multi-billion-dollar business.

28.    On information and belief, similar versions of these investor presentations which contained virtually identical material misrepresentations and omissions were also circulated to prospective investors in, without limitation, January and April 2019.

29.    The misrepresentations and omissions detailed above formed the basis for Plaintiffs' respective decisions to invest in Integrated CBD and/or Integrated CBD Holdings and Plaintiffs reasonably relied on them.

30.    In addition, beginning as early as September 2019, Horsman began creating or causing to be created and disseminating or causing to be disseminated investor update letters.  Without limitation, one was sent in September 2019, one in October 2019, and another in November 2019.

31.    The letters were designed to create the impression that Integrated CBD was flourishing, including by purportedly securing large product orders and positive industry feedback.

32.     Moreover, the November 2019 letter represented that Integrated CBD's farming operations were underway and that, despite minor setbacks, the company was "enthusiastic about our prospects moving forward."  This letter omitted material information about both the quality and quantity of Integrated CBD's farmland and farming operations.

33.     These letters were designed to induce Plaintiffs to remain invested in the company and not to seek legal recourse for having been defrauded by Horsman.

## II.     Horsman's representations were materially false and misleading

### A.     *Integrated CBD did not have access to over 10,000 acres of farmland*

34.     As detailed above, Horsman repeatedly represented to Plaintiffs that Integrated CBD had access to over 10,000 acres of farmland.  This representation was false.

35.     In reality, Integrated CBD had only leased 8,524 acres of farmland.  As will be explained in greater detail herein, (1) much of this farmland was of extremely poor quality, and (2) some of the leases Integrated CBD executed with respect to this farmland were nothing more than affiliated-party transactions designed exclusively to enrich Horsman.

36.     Despite Horsman's repeated projections that most, if not all, of this farmland would be utilized in 2021, Integrated CBD's internal models projected that

the company was on track to utilize no more than 5,000 farmable acres by the end of 2023.

**B.**     ***Integrated CBD's farmland was of extremely poor quality***

37.     In addition to touting the quantity of farmland Integrated CBD purportedly had access to, Horsman also represented that the quality of the company's farmland was "superior." This representation was false.

38.     In reality, the farmland Integrated CBD had access to had never been successfully farmed, and was well-known to be some of the worst land in its region for farming. This was, in part, due to the fact that the land was rocky, had too much sodium in the soil and water, and suffered from well and irrigation defects.

39.     As a result, Horsman's representations that Integrated CBD could or would farm on anywhere near 10,000 acres of farmland were false or misleading as Horsman knew the land could not be used for his stated purposes.

40.     As a result, Horsman's representation that Integrated CBD was "enthusiastic" about its farming prospects had no factual support.

41.     As a result, Horsman's projections about the financial viability and potential for rapid growth of Integrated CBD—which were based in part on the company's purported ability to utilize increasingly large portions of its farming acreage—could not have been true.

C.     *Integrated CBD's purported strategic partnership with Verified Organic was simply a ploy to enrich Horsman through his affiliated company*

42.     On multiple occasions, Horsman represented that Integrated CBD developed a partnership with Verified Organic, and that Integrated CBD's ability to dually label its products "USDA Certified Organic" and as "Verified Organic" set it apart from its competition.

43.     However, Horsman did not disclose that Verified Organic was not a label consumers or industry personnel were familiar with and, in fact, that Verified Organic was Horsman's own startup company.

44.     In reality, the purported "partnership" between Integrated CBD and Verified Organic was nothing more than a way to benefit Horsman's other venture, Verified Organic, while offering no benefit to Integrated CBD.

45.     The "partnership" did not end with the label.  Rather, Horsman directed or caused Integrated CBD to invest $500,000 of investor monies into Verified Organic in exchange for a 5% ownership stake (valuing Verified Organic at $10,000,000).  This funneled precious capital (invested, in part, by Plaintiffs) out of Integrated CBD into another Horsman-owned entity, enriching Horsman without delivering any benefit to Integrated CBD or, in turn, Plaintiffs.

### III. Horsman siphoned funds to himself and affiliated entities through numerous related-party transactions

#### A. *Integrated CBD grossly overpaid to lease farmland for its operations*

46.     To begin its purported farming operations, Integrated CBD leased farmland from Integrated AG XI, LLC ("Integrated AG XI").  Both Integrated CBD and Integrated AG XI are ultimately owned and controlled by Horsman.

47.     Specifically, on March 15, 2019, Integrated CBD entered into a 20-year lease agreement with Integrated AG XI (the "March 2019 Lease") for farmland in Yuma County, Arizona.  Integrated CBD agreed to pay the following amounts pursuant to the March 2019 Lease:

| Year | Rent per tillable acre | Tillable acres | Annual rent |
|------|------------------------|----------------|-------------|
| 2019 | $600.00[1] | 2,700 | $1,620,000.00 |
| 2020 | $615.00 | 3,769 | $1,980,489.00[2] |
| 2021 | $630.38 | 3,769 | $2,375,902.00 |

48.     Because the leased farmland was owned and controlled by affiliated entities owned and controlled by Horsman, Horsman reaped the rewards of the

---

[1] Rent increases 2.5% per year.
[2] This value is equal to $2,317,935.00 minus $337,446.00, which accounts for a credit from 2019 rent payments.

March 2019 Lease, which was essentially a transaction whereby Horsman leased the farmland to himself.

49.     On April 15, 2019, Integrated CBD entered into another lease for additional farmland (the "April 2019 Lease").  This time, Integrated CBD leased farmland located in Yuma and Maricopa Counties from Hyder Ranch LLC (the "Hyder Farmland"), which was partially owned by Horsman.   Integrated CBD agreed to pay the following amounts pursuant to the April 2019 Lease:

| Year | Rent per tillable acre | Tillable acres | Annual rent |
|------|------------------------|----------------|-------------|
| 2019 | $600.00 | 2,300 | $1,380,000.00 |
| 2020 | $600.00 | 4,755 | $2,853,000.00 |
| 2021 | $615.00[3] | 4,755 | $2,924,325.00 |

50.     Once again, because the leased farmland was owned and controlled by an affiliated entity partially owned by Horsman, Horsman reaped the rewards of the April 2019 lease, enriching himself at investors' (including Plaintiffs') expense.

51.     Integrated CBD's gross overpayment for the Yuma and Hyder Farmland—intended solely to enrich Horsman—is demonstrated by looking at the years 2019-2021:

---

[3] Rent increases 2.5% per year.

a.  In 2019, Integrated CBD leased a total of 5,000 acres of farmland at $600.00 per acre, committing to a total lease price of $3,000,000.00 for the year;

b.  In 2020, Integrated CBD committed to lease a total of 8,524 acres of farmland at no less than $600.00 per acre, committing to a total lease price of no less than $4,833,489.00; and

c.  In 2021, Integrated CBD committed to lease a total of 8,524 acres of farmland at no less than $615.00 per acre, committing to a total lease price of no less than $5,242,260.00.

Shortly before Integrated CBD entered into the March 2019 Lease and the April 2019 Lease, Integrated AG XI, along with other affiliated entities, acquired the Yuma Farmland for approximately $9,130,000.00 and Hyder Ranch LLC acquired the Hyder Farmland for approximately $2,386,470.00, representing a total purchase price of approximately $11,516,470.00.  **Over just the first three years of the March 2019 Lease and April 2019 Lease, Integrated CBD committed to pay Horsman-affiliated entities more than $13 million.  Thus, Horsman, through entities he owned/controlled, stood to recoup more than the total purchase price in just three years by using investor money to grossly overpay for leased farmland that, to be sure, quantitatively and qualitatively failed to meet the standards Horsman represented to investors.**

**B.** **Similarly, Integrated CBD improperly leased equipment and services from its affiliates**

52.    Unfortunately, Horsman's misconduct and misuse of Plaintiffs' funds did not end with the farmland leases described above.  In addition, Horsman caused Integrated CBD to enter into agreements with affiliated entities for a variety of services and equipment.  These agreements were not negotiated at arm's length, rather, like the farmland leases, they were just vehicles intended to funnel Plaintiffs' money to Horsman.

53.    Specifically, and not by way of limitation, Horsman caused Integrated CBD and/or its affiliated entities to contract the following equipment services:

   a. Farm management services from AZ Farm Management LLC;

   b. Equipment leases from Integrated AG Equipment LLC and IAG Equipment LLC;

   c. Operational services from Integrated AG Operations LLC; and

   d. Organic verification technology and services from Verified Organic LP and Verified Organic LLC.

**C.** **Executive compensation**

54.    In addition to the proceeds Horsman reaped from the related-party transactions described above, Horsman drew executive compensation of $12,500 per month.

## IV.     By 2020, Integrated CBD had collapsed

55.     By the beginning of 2020, Integrated CBD had fired all of its employees and had lost all of Plaintiffs' money.

56.     Horsman spent Plaintiffs' and the company's money paying credit card bills and funneling money to affiliated entities through the improper transactions detailed above, among other improper things.

57.     Despite being a defunct entity—attributable to Horsman's misconduct and not to the Covid-19 pandemic—Horsman caused Integrated CBD to apply for a Paycheck Protection Program loan.  The loan request was ultimately approved in the amount of $150,000-$350,000.  These funds were not used to pay Integrated CBD's employees, of which there were none.

## CAUSES OF ACTION

## COUNT I
## FRAUD IN THE INDUCEMENT

58.     Plaintiff re-alleges and adopts all of the allegations set forth in paragraphs 1 through 57 above.

59.     Horsman intentionally made and caused Integrated CBD to make false statements and omissions of material fact regarding Plaintiffs' investments in Integrated CBD and/or Integrated CBD Holdings.

60.     Horsman knew that the representations were false and intended for Plaintiffs to rely on those representations in investing in Integrated CBD and/or Integrated CBD Holdings.

61.     Plaintiffs reasonably relied on those false representations to their detriment.  Specifically, the representations caused Plaintiffs to invest in Integrated CBD and/or Integrated CBD Holdings in the amounts specified in paragraphs 7 through 15.

62.     As a result of these false statements, material omissions, and fraudulent conduct by Defendant, Plaintiffs suffered financial damages in the form of the loss of their investments.

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor against Defendant, awarding compensatory and punitive damages, costs of the lawsuit, and such other relief as the Court deems just and appropriate.

## CLAIM II
## BREACH OF FIDUCIARY DUTY

63.     Plaintiffs re-allege and adopt all of the allegations set forth in paragraphs 1 through 57 above.

64.     Defendant Horsman owed a fiduciary duty to Plaintiffs.

65.     Plaintiffs reposed their trust and confidence in Defendant Horsman.

66.     Defendant Horsman undertook such trust and assumed a duty to advise, counsel, and protect Plaintiffs.

67.     Defendant Horsman breached his duty to Plaintiffs.

68.     Defendant Horsman's breach caused Plaintiffs to incur damages in the form of the loss of all the funds they invested in Integrated CBD and Integrated CBD Holdings.

69.     Defendant Horsman had actual knowledge that failing to operate Integrated CBD consistent with Plaintiffs' best interests was wrong and that failure to do so would result in Plaintiffs losing their invested funds.

70.     Despite that knowledge, Defendant Horsman intentionally pursued that course of conduct which indeed resulted in Plaintiffs' total loss of the funds they invested in Integrated CBD and Integrated CBD Holdings.

WHEREFORE, Plaintiffs pray that this Court enter a judgment in their favor against Defendant Horsman for actual and punitive damages in an amount to be determined by the trier of fact, costs of the lawsuit, pre- and post-judgment interest, and such relief as the Court deems just and appropriate.

[signature block on the following page]

Dated: <u>April 27, 2022</u>              Respectfully submitted,

**SILVER LAW GROUP**
*Counsel for Plaintiffs*
11780 W. Sample Road
Coral Springs, Florida 33065
Telephone: (954) 755-4799
Facsimile: (954) 755-4684

By: <u>s:/Scott L. Silver      </u>
    **Scott L. Silver, Esq.**
    Fla. Bar No. 095631
    E-mail:  SSilver@silverlaw.com
    **Ryan A. Schwamm, Esq.**
    Fla. Bar No. 1019116
    Email: rschwamm@silverlaw.com